

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**ORIGINAL**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. |
| v. | Case:5:19-cr-20738<br>Judge: Levy, Judith E.<br>MJ: Whalen, R. Steven<br>Filed: 11-06-2019 At 09:49 AM<br>INFO USA VS ASHTON (DP) |
| D-1   JOSEPH ASHTON, | |
| Defendant.<br>_____/ | Count One: Conspiracy to Commit Honest Services Wire Fraud (18 U.S.C. § 1349)<br><br>Count Two: Conspiracy to Commit Money Laundering (18 U.S.C. § 1956(h)) |

## INFORMATION

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1.  The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization engaged in an industry affecting commerce within the meaning of Sections 402(i) and 402(j) of Title 29, United States Code. The UAW represented tens of thousands of production, skilled trades, and salaried workers employed by the General Motors Company (GM) at numerous locations in Michigan, and across the United States and Canada. The UAW was headquartered in Detroit, Michigan.

2. The UAW-GM Center for Human Resources (CHR) was a tax-exempt corporation based in Detroit, Michigan. The stated purpose of the CHR was to develop, deliver, coordinate and administer joint strategies and programs designed to educate and train UAW-represented GM employees. GM's funding of the CHR was negotiated as part of the relevant collective bargaining agreements between UAW and GM.

3. The Executive Board-Joint Activities (Executive Board) was the governing body responsible for overseeing and facilitating the joint activities of the CHR. The Executive Board's duties and responsibilities included, but were not limited to, the following: setting policies, allocating funds for projects and activities, and monitoring expenditures for approved projects and activities. The Co-Directors of the Executive Board were the Vice President, GM North America (GMNA) Labor Relations, and the UAW Vice President and Director of the GM Department. The remaining members of the Executive Board consisted of GM and UAW representatives, equally appointed by each of the Co-Directors.

4. From in or about July of 2010, until in or about July of 2014, JOSEPH ASHTON was the UAW Vice President and Director of the GM Department. During this time, he also served as an officer on the CHR Executive Board.

5. From in or about 2006, through on or about July 1, 2018, Michael Grimes was a senior UAW official, at times working closely with JOSEPH ASHTON. Michael Grimes also served as a member on the CHR Executive Board.

6. From in or about July of 2010, through in or about July of 2014, Jeffery Pietrzyk was a senior UAW official, working closely with JOSEPH ASHTON. During this time period, Jeffery Pietrzyk also served as the Co-Director of the CHR and as an officer on the CHR Executive Board.

7. Vendor B was a chiropractor based in the Philadelphia, Pennsylvania, and southern New Jersey areas. Vendor B had a relationship with JOSEPH ASHTON for many years preceding the relevant time period of this Information. JOSEPH ASHTON introduced Jeffery Pietrzyk to Vendor B when Jeffery Pietrzyk worked at the CHR. In or about August 2012, Vendor B opened a business which purported to sell American-made custom watches. The only income Vendor B's company earned was from UAW and CHR business.

## COUNT ONE
## (Conspiracy to Commit Honest Services Wire Fraud – 18 U.S.C. § 1349)

8. The General Allegations are incorporated in Count One by this reference.

9. As a UAW Vice President and Director of the GM Department, as well as a member of the CHR Executive Board, JOSEPH ASHTON was a fiduciary of the UAW and the CHR and was prohibited by UAW and CHR policy from accepting kickbacks and improperly using his position to benefit himself, his family and friends, and outside businesses.

10. JOSEPH ASHTON was required by state and federal law to discharge his duties solely in the interest of the union and its membership. 29 U.S.C. §§ 186 & 501(a).

11. Michigan and federal law prohibits union officials, such as JOSEPH ASHTON, from accepting bribes. M.C.L. § 750.125; 29 U.S.C. §§ 186 & 501.

12. From in or about 2012, through in or about July of 2016, in the Eastern District of Michigan, Southern Division, and elsewhere, the defendant, JOSEPH ASHTON, Jeffery Pietrzyk, Michael Grimes, and others, unlawfully and knowingly conspired and agreed with each other and with other persons, known

and unknown, to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

## SCHEME TO DEFRAUD

13. JOSEPH ASHTON conspired with Michael Grimes and Jeffery Pietrzyk to devise a scheme to defraud the CHR and UAW members of their right to honest, faithful, and impartial services, including the CHR's and UAW members' right to conscientious, loyal, faithful, disinterested, unbiased service, to be performed free of deceit, undue influence, conflict of interest, self-enrichment, self-dealing, concealment, bribery, fraud, and corruption, and to cause writings, signals, and sounds to be transmitted by wire in interstate and foreign commerce, for the purpose of executing and attempting to execute the scheme and artifice, as set forth below.

## OBJECTS OF THE SCHEME TO DEFRAUD

14. From in or about 2012, through in or about July of 2016, it was an object of the scheme to defraud for JOSEPH ASHTON, Michael Grimes, and Jeffery Pietrzyk to use their positions with the UAW and CHR to personally enrich themselves by deceptively soliciting, influencing, and obtaining a contract for Vendor B to provide watches to the CHR and to UAW members. In return, JOSEPH ASHTON, Michael Grimes, and Jeffery Pietrzyk, demanded and

5

accepted from Vendor B hundreds of thousands of dollars in bribes and kickbacks in the form of cash and checks.

15. JOSEPH ASHTON, Michael Grimes, and Jeffery Pietrzyk concealed and did not disclose the manner in which the contract between the CHR and Vendor B was obtained or the fact that JOSEPH ASHTON, Michael Grimes, and Jeffery Pietrzyk accepted bribes and kickbacks from Vendor B.

## METHODS OF ACCOMPLISHING THE SCHEME TO DEFRAUD

16. To achieve the objects of the scheme to defraud, JOSEPH ASHTON, Michael Grimes, and Jeffery Pietrzyk participated in various transactions and activities, which included, but are not limited to, the following:

17. In or about 2010, JOSEPH ASHTON convinced Vendor B to loan $250,000 to a construction company owned by an associate of JOSEPH ASHTON's. In or about March of 2012, the construction company stopped making loan payments to Vendor B.

18. In or about 2012, JOSEPH ASHTON approached Vendor B and proposed a way that Vendor B could recoup the money on the failed loan to the construction company. JOSEPH ASHTON told Vendor B that the UAW was going to purchase over 50,000 watches, and directed Vendor B to open a company that could win the contract to supply the watches. JOSEPH ASHTON suggested that

the profits from the watch contract would repay Vendor B what he was owed on the $250,000 loan to the construction company.

19. In August and September of 2012, as directed by JOSEPH ASHTON, Vendor B filed a Certificate of Formation with the State of New Jersey, obtained an Employer Identification Number, and established a website for Vendor B's business.

20. In late 2012, and early 2013, Vendor B located a manufacturer that could provide 58,000 custom watches. JOSEPH ASHTON actively participated in the design, production and pricing of the watches. JOSEPH ASHTON negotiated and approved for Vendor B to purchase the watches from the manufacturer at a total cost of approximately $2,288,200, based on a unit cost of $42.90 per watch.

21. JOSEPH ASHTON then directed Vendor B to submit a bid for the watch contract to Jeffery Pietrzyk, listing a total price of $3,973,000 based on a unit cost of $68.50 per watch. Both Jeffery Pietrzyk and JOSEPH ASHTON then used their positions with the UAW and CHR to influence and facilitate the award of the watch contract by the CHR to Vendor B.

22. As a result, on or about April 13, 2013, the CHR awarded a contract valued at $3,973,000 to Vendor B for 58,000 watches at a price of $68.50 per watch.

23. On or about May 1, 2013, the CHR sent via interstate wire transfer $1,973,000 to Vendor B as the first payment for the watches. Shortly thereafter, JOSEPH ASHTON demanded $250,000 from Vendor B as a kickback for the watch contract.

24. Vendor B began making regular cash withdrawals from his bank account in order to pay JOSEPH ASHTON. At JOSEPH ASHTON's direction, Vendor B would travel to JOSEPH ASHTON'S house to deliver the cash payments on a regular basis. Vendor B gave JOSEPH ASHTON between $5,000 and $30,000 each time he visited JOSEPH ASHTON between in or about May of 2013, through early 2015.

25. In 2016, Vendor B began providing kickbacks in the form of checks payable to JOSEPH ASHTON. These checks, which were deposited into JOSEPH ASHTON's personal bank account, included the following:

|    | Date      | Payor    | Payee         | Amount   |
|----|-----------|----------|---------------|----------|
| a. | 2/26/2016 | Vendor B | JOSEPH ASHTON | $15,000  |
| b. | 4/11/2016 | Vendor B | JOSEPH ASHTON | $5,000   |
| c. | 5/18/2016 | Vendor B | JOSEPH ASHTON | $5,000   |
| d. | 7/1/2016  | Vendor B | JOSEPH ASHTON | $5,000   |

26. In exchange for the watch contract, JOSEPH ASHTON also directed Vendor B to pay kickbacks to Jeffery Pietrzyk. In order to conceal their scheme to defraud, Vendor B wrote "antique furniture" or "furniture" in the memo line of the checks he gave to Jeffery Pietrzyk. Jeffery Pietrzyk accepted the following kickbacks from Vendor B, some of which he split with Michael Grimes:

|    | Date       | Payor             | Payee             | Amount   | Memo                |
|----|------------|-------------------|-------------------|----------|---------------------|
| a. | 8/28/2013  | Vendor B          | Jeffery Pietrzyk  | $25,000  | "antique furniture" |
| b. | 8/29/2013  | Jeffery Pietrzyk  | Michael Grimes    | $12,500  | "antique furniture" |
| c. | 12/5/2013  | Jeffery Pietrzyk  | Michael Grimes    | $12,500  | "antique furniture" |
| d. | 1/18/2014  | Vendor B          | Jeffery Pietrzyk  | $25,000  | "furniture"         |
| e. | 7/18/2014  | Vendor B          | Jeffery Pietrzyk  | $10,000  | "furniture"         |
| f. | 8/12/2014  | Vendor B          | Jeffery Pietrzyk  | $10,000  | "antique furniture" |

27. Vendor B's payments to JOSEPH ASHTON continued through the summer of 2016. In the fall of 2016, following the news of a federal investigation into corruption in the UAW and Fiat Chrysler Automobiles US LLC, JOSEPH ASHTON met with Vendor B and informed Vendor B that the payments had to stop because of the UAW/Fiat Chrysler investigation.

28. On or about January 31, 2014, the CHR received the 58,000 watches Vendor B provided. The watches were never distributed to UAW-represented GM workers and are currently being stored in a warehouse at the CHR.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
**(Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h))**

From in or about 2012, through in or about July of 2016, said dates being approximate, in the Eastern District of Michigan, Southern Division, and elsewhere, defendant JOSEPH ASHTON, knowingly combined, conspired, and agreed with others both known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to wit: to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is at least $250,000, such property having been derived from a specified unlawful activity, that is, conspiracy to commit honest services wire fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## CRIMINAL FORFEITURE ALLEGATIONS

## (18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461)

1. Upon conviction of conspiracy to commit honest services wire fraud, in violation of Title 18, United States Code, Section 1349, as alleged in Count One, defendant JOSEPH ASHTON shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, his right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds obtained, directly or indirectly, as a result of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349.

2. Property subject to forfeiture to the United States for violation of Count One includes, but is not limited to, a forfeiture money judgment representing a sum of money equal to the total amount of proceeds obtained as a result of defendant's participation in the conspiracy to commit honest services wire fraud. The United States anticipates that this amount shall be approximately $250,000 dollars.

3. Under Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, the defendant JOSEPH ASHTON, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, a forfeiture money

judgment representing a sum of money equal to the total amount of property involved in the money laundering conspiracy.

4. Substitute Assets: Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), defendant JOSEPH ASHTON shall forfeit substitute property, up to the value of the sums of money described in paragraphs 2 and 3 above, if, by any act or omission of the defendant, the property described:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to or deposited with a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 18, United States Code, Section 982(a)(1); Title 28, United States Code, Section 2461(c); and Rule 32.2, Federal Rules of Criminal Procedure.

MATTHEW SCHNEIDER
United States Attorney

DAVID A. GARDEY
Assistant United States Attorney
Chief, Public Corruption Unit
211 W. Fort Street, Suite 2001
Detroit, MI   48226
313-226-9591
david.gardey@usdoj.gov
P48990

FRANCES LEE CARLSON
Assistant United States Attorney
Deputy Chief, Public Corruption Unit
211 W. Fort Street, Suite 2001
Detroit, MI   48226
313-226-9696
frances.carlson@usdoj.gov
P62624

EATON P. BROWN
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI   48226
313-226-9184
eaton.brown@usdoj.gov
P66003


Dated: November 6, 2019

| (Companion Case information MUST be completed by AUSA and initialed.) |
|---|

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Numbers: 19-20520 & 19-20630 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☒ Yes    ☐ No | AUSA's Initials: _FC_ |

**Case Title:** USA v. Joseph Ashton

**County where offense occurred :** Wayne

**Check One:**   ☒ Felony      ☐ Misdemeanor      ☐ Petty

____ Indictment/ ✔ Information --- **no** prior complaint.
____ Indictment/ Information --- based upon prior complaint [Case number: 18-MJ-30489 ]
____ Indictment/ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

November 6, 2019
Date

*[signature]*

Frances L. Carlson
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9696
Fax:    313-226-3413
E-Mail address: Frances.Carlson@usdoj.gov
Attorney Bar #: P62624

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.