United States District Court
Eastern District of Michigan

United States of America,

v.                                              Hon. Bernard A. Friedman

Joseph Ashton,                                  Case No. 19-cr-20738

      Defendant.
_____/

## Government's Sentencing Memorandum

Joseph Ashton earned a six-figure yearly income from at least 2006, until 2014, as Region 9 Director and then as the Vice President in charge of the UAW's General Motors Department. He had the power, prestige, and influence that came with being a high-ranking UAW official. But that was not enough. Motivated by greed, Ashton corruptly used his power and influence to illegally and unethically benefit himself. Ashton steered an almost $4 million watch contract with the UAW-GM Center for Human Resources (CHR) to his chiropractor friend, Vendor B. Ashton knew that he would later strong-arm Vendor B for a $250,000 kickback from the profits of the contract. This was both

1

illegal and a breach of Ashton's fiduciary duty to the CHR and UAW membership. Even worse, Ashton and his chiropractor friend were the only ones who benefitted from this lucrative contract. The UAW never distributed the watches to its members. Instead, all 58,000 watches were left sitting on pallets in CHR storage.

 

Ashton's fraud also had more permanent and devastating collateral damage: the dissolution of the CHR and the resulting loss of at least 71 jobs.[1]

The government submits that a sentence of 34 months' imprisonment is sufficient but not greater than necessary to achieve the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2). This sentence will send a clear message that Ashton's self-dealing and

---

[1] *See* https://www.michigan.gov/documents/leo/2020-01-30_UAW-GM_CenterforHumanRes_WARN_679977_7.pdf; *see also* https://www.detroitnews.com/story/business/columnists/daniel-howes/2020/01/30/uaw-corruption-fallout-hits-opeiu-bystanders/4612215002/

breach of trust will not be tolerated and will be justly punished. Further, it will send a clear message to fiduciaries in similar positions of power as Ashton, that corruption and greed have serious consequences.

### I. Factual & Procedural History

#### A. Ashton's Convictions

On December 4, 2019, pursuant to a Rule 11 Plea Agreement, Ashton pleaded guilty to one count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (ECF No. 11, PageID.31-72.) Ashton is scheduled to be sentenced on November 17, 2020 at 1:00 p.m.

#### B. Ashton's Corrupt Conspiracy

In 2010, Ashton became the UAW Vice President in charge of the General Motors Department. He also became the Co-Director of the CHR Executive Board. The mission of the CHR was to educate and train UAW-represented GM employees. Ashton's position within the union and on the executive board of the CHR carried with it a fiduciary duty to both the UAW and the CHR to ensure that each organization's

money was spent lawfully and ethically. Ashton breached this duty by illegally using his access and influence over the bidding process to ensure that a $4 million contract for watches with the CHR went to a chiropractor friend (Vendor B) who would reward Ashton personally on the backend. Steering the contract to Vendor B would also allow Vendor B to recoup a $250,000 loan he previously made to a failed construction company at the urging of Ashton and Ashton's brother.

Ashton orchestrated this sham of a contract. He directed Vendor B, a lifelong chiropractor, to open a new company for the purpose of bidding on and then fulfilling the CHR watch contract. At Ashton's direction, Vendor B filed incorporation documents, obtained a federal employment identification number, and even registered a domain name for a company website. Ashton used his influence at the CHR to ensure that the watch contract would be awarded to Vendor B. Ashton approved the $4 million that the CHR would use to pay for the watches, knowing that this would ensure that Vendor B would earn a profit of over $1.6 million.

Out of that profit, Ashton demanded kickbacks from Vendor B who delivered Ashton regular cash payments from May 2013, through

4

early 2015. In 2016, Vendor B wrote Ashton four checks totaling $30,000, which Ashton deposited into his personal bank account. The only thing that curbed Ashton's greed was his fear of getting caught once the federal investigation into the corrupt activities of the UAW began being publicly reported in mid-2016. By then, Ashton already had received approximately $250,000 in kickbacks from Vendor B.

## II. Sentencing Guidelines Calculations

In the Rule 11 plea agreement, the parties agreed on a guideline range of 30-37 months based on a total offense level of 19 and a criminal history category of I. The probation department arrived at a higher guideline range of 33-41 months based on a total offense level of 20, and the same criminal history category. The difference results from the probation department's inclusion of a two-level increase pursuant to §2S1.1(b)(2)(B). The parties disagreed with the application of this increase since Ashton was convicted of a conspiracy under 18 U.S.C. § 1956(h) and the sole object of the conspiracy was to commit an offense set forth in 18 U.S.C. § 1957(h). *See* U.S.S.G. § 2S1.1, App. Note 3.

The government notes that the Court considered this same issue when sentencing Ashton's co-conspirator, Michael Grimes, and

5

determined that it would not apply the two-level increase. The government asks that the Court do the same in this case and accept the agreement of the parties.

### III. Section 3553(a) Factors

Through 18 U.S.C. § 3553(a) Congress has provided the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary." For Ashton, the most important factors to consider are the nature and circumstances of the crime, the need to reflect the seriousness of the offense, to provide just punishment, to promote adequate deterrence, and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. These factors support a sentence of 34 months' imprisonment.

#### A. The nature and circumstances of Ashton's crimes

Ashton spent over half of his life as a UAW member and leader. His hard work and diligence caused Ashton to rise swiftly through the union ranks. However, rather than use this increased power and influence to serve the UAW, Ashton corruptly served himself by lining his pockets with money that was not his to take. Ashton appears

genuinely remorseful for the crimes he committed and regrets the pain he has inflicted on the UAW membership and his family, however his actions should have consequences which is why the government requests a sentence of imprisonment within the guideline range.

### B. Reflecting the seriousness of Ashton's crimes and providing just punishment

There is no question that Ashton's crimes are serious. Steering a $4 million contract to his friend so he could obtain $250,000 in kickbacks is undoubtedly a grave offense. The $4 million that the CHR paid for watches that were never distributed to rank and file workers is money that could otherwise have been used to fulfill the CHR's mission of training and educating UAW-represented GM workers. And while it is certainly true that Vendor B was a willing participant in the conspiracy, Ashton was the author and instigator. Rather than focusing on obtaining the UAW vendor with the highest quality and most economical product, Ashton instead concentrated on amassing his own wealth.

Ashton's crimes also had permanent and tragic consequences that go well beyond the money he took. Ashton's criminal conduct directly resulted in the closing of the CHR building, the termination of those

individuals who were employed at or assigned to the CHR, and the lost training opportunities for UAW-represented GM workers. As one UAW member wrote:

> *The harm Joe Ashton has done goes way beyond lining his pockets for personal enrichment. The ripple effect from his greed has impacted a great many people. At least 64 people will lose their job as a direct result of him and his co-conspirators actions causing the closing of the CHR building....How about the lost opportunities for workers who don't have training programs to attend and....casting all labor organizations in a bad light.*

Letter from UAW Member, attached as Exhibit A.

The harm Ashton caused transcends what is quantifiable in dollars lost and years in prison. Ashton's actions resulted in the widespread loss of trust and faith from UAW members in the union that was supposed to represent their best interests:

> *What he and others have done, has set the UAW back 50 years of gainful trust for their International officers, going all the way back to Walter Reuther, former International President, deceased 1974. The hurt and lost feeling of trust that now encircles myself and many members across the nation may never be repaired during my lifetime. The anguish and feelings of mistrust runs amuck throughout the UAW rank and file because of his misdeeds and conduct.*

Letter from former UAW Local President, attached as Exhibit B.

> *Those of us who worked on the shop floor and on the assembly lines want Mr. Ashton to get much more than the 5 years in prison, even*

> *though more time in prison won't even start to repair the damage he has caused this once great Union.*

Letter from retired UAW member, attached as Exhibit C.

Ultimately, Ashton placed his drive for personal enrichment ahead of his fiduciary responsibilities to the UAW and the CHR, and for that he should be punished. 18 U.S.C. § 3553(a)(2)(A).

### C. The need to deter similar crimes in the future

Ashton's level of remorse suggests that specific deterrence should not be a significant consideration for this Court when imposing sentence. 18 U.S.C. § 3353(a)(2)(B). However, as the government's prosecution of the UAW has revealed, the culture of corruption within the senior leadership of the UAW is systemic. The need to transform the unethical, greedy, and self-indulgent behavior characteristic of the UAW leadership is long overdue. Labor union members depend on their leaders to advocate aggressively for the benefit of the membership and their families. When senior union officials like Ashton fail to honor these responsibilities and positions of trust, their corruption must have consequences. A prison sentence hopefully will deter future union leaders who may be tempted to engage in similar criminal conduct.

## D. The need to avoid unwarranted sentencing disparities

A sentence of 34 months' imprisonment would ensure that Ashton's sentence is consistent with the sentence imposed on his co-conspirator, Michael Grimes, as well as other corrupt UAW officials who have been sentenced in this district over the last three years. The Court sentenced Grimes to 28 months' imprisonment for taking $1.5 million in bribes and kickbacks. The Court departed below the guideline range based on the government's recommendation due to the significant cooperation Grimes provided in his case. There is no such recommendation for Ashton, nor any other reason to depart below the guideline range.

Since August 2017, there have been nine current and former UAW officials and other related individuals who have been convicted and sentenced for corruption-related offenses.

- Alphons Iacobelli (66 months in prison after reduction in sentence for cooperation; former FCA Vice President for Employee Relations)

- Jerome Durden (15 months in prison after reduction in sentence for cooperation; former FCA Financial Analyst)

- Michael Brown (12 months and a day in prison after reduction in sentence for cooperation; former Director of FCA's Employee Relations Department)

- Virdell King (60 days in prison after reduction in sentence for cooperation; former senior UAW official)

- Keith Mickens (12 months and a day in prison after reduction in sentence for cooperation; former senior UAW official)

- Nancy A. Johnson (12 months and a day in prison after reduction in sentence for cooperation; former senior UAW official)

- Monica Morgan (18 months in prison; widow of UAW Vice President General Holiefield)

- Norwood Jewell (15 months in prison; former UAW Vice President)

- Michael Grimes (28 months after reduction in sentence for cooperation; former senior UAW official).

There are six more UAW officials, including Ashton and his co-conspirator Jeffrey Pietrzyk, who have pleaded guilty and are awaiting sentencing. Among the list of already sentenced UAW officials, Norwood Jewell was in a circumstance similar to Ashton: a UAW Vice President when the crime was committed and no reduction in his sentence for cooperation. (2:19-cr-20146 ECF No. 17, PageID.189, 194.) Jewell received a sentence at the midpoint of the 12-18 month guideline range. (2:19-cr-20146 ECF No. 17, PageID.167.) Ashton's position within the

UAW and the fact that he spearheaded and orchestrated the fraudulent scheme in this case warrants a guideline sentence.

## IV. Defendant's Health

Based on the October 28, 2020 letter from Ashton's physician, the government anticipates that Ashton will request a downward variance from the guideline range based on his health conditions in light of Covid-19. The letter, which details a number of health considerations, including an unspecified heart condition, is in addition to the diagnoses of hypertension and skin cancer which were listed in the PSR. (PSR ¶ 44). The PSR also corroborates Ashton's physician's assessment that Ashton's obesity poses an increased risk to his health. (PSR ¶ 43). If Ashton were already imprisoned and sought compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), his obesity could qualify as "extraordinary and compelling" conditions thereby making him eligible for early release. *See* USSG § 1B1.13 cmt. n.1; CDC Risk Factors (as updated) (identifying the confirmed medical conditions that increase someone's risk from COVID-19). Consequently, rather than granting Ashton's request for a downward variance based on his health

12

conditions, the government requests the Court instead delay the date that Ashton reports to the Bureau of Prisons.

## V.  Conclusion

The government requests a sentence of 34 months' imprisonment.

Respectfully submitted,

Matthew Schneider
United States Attorney

*/s/Frances Lee Carlson*
Frances Lee Carlson
Eaton P. Brown
Assistant United States Attorneys
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9100
Email: frances.carlson@usdoj.gov

Dated: November 10, 2020